UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11640-RWZ

BRIGHAM AND WOMEN'S HOSPITAL, INC. and
INVESTORS BIO-TECH, L.P.

v.

PERRIGO COMPANY and L. PERRIGO COMPANY

MEMORANDUM OF DECISION AND ORDER

November 10, 2016

ZOBEL, S.D.J.

Plaintiffs Brigham and Women's Hospital, Inc., and Investors Bio-Tech, L.P. (collectively, "Brigham"), allege that defendants Perrigo Company and L. Perrigo Company (collectively, "Perrigo") infringe Brigham's U.S. Patent No. 5,229,137 ("the '137 patent") by manufacturing, marketing, and/or selling a generic version of Pepcid Complete, which Brigham maintains is covered by the '137 patent. Perrigo has moved for summary judgment of non-infringement of the asserted claims of the '137 patent (Docket # 121). Also before me is Brigham's Motion to Strike Expert Report of Gary Annunziata, D.O., and Motion for Summary Judgment Dismissing Expert's Theory of Non-Infringement (Docket # 126).

## I. Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)).

Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Coll v. PB Diagnostic Sys. Inc., 50 F.3d 1115, 1121 (1st Cir.1995) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). When evaluating a motion for summary judgment, the court must view the entire record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir.1993).

Summary judgment of non-infringement may be granted only if one or more limitations of the claim in question do not read on an element of the accused product, either literally or under the doctrine of equivalents. See Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1376 (Fed. Cir. 2005); see also TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002) (It "is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). It can therefore be granted only if, viewing the facts in the light most favorable to the patentee, there is no genuine issue as to whether the accused product is covered by the claims as I have construed them. See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## II. Perrigo's Motion for Summary Judgment of Non-Infringement of the '137 Patent (Docket # 121)

### A. The '137 Patent

The '137 patent describes and claims pharmaceutical compositions and methods for providing humans with instant and sustained relief from the pain, discomfort, and other symptoms associated with episodic heartburn. It is listed in the FDA's Orange Book for Pepcid Complete (New Drug Application No. 020958). Docket # 139-5 at 8. Asserted claims 1, 4-7, and 12 are directed to a single step of "orally administering" effective dosages of an antacid and histamine $H_2$-receptor antagonist ("$H_2$RA") for providing humans with immediate and sustained relief from episodic heartburn. '137 patent at 2:22-26. Claim 1, the only independent claim, sets forth:

> A method of providing immediate and sustained relief from pain, discomfort and/or symptoms associated with episodic heartburn in a human, said method comprising:
>
>> orally administering to a human together or substantially together an antacid in an amount effective to substantially inhibit or block gastric acid and a histamine H2-receptor antagonist in an amount effective to substantially inhibit or block gastric acid secretion for providing the human with immediate and sustained relief from pain, discomfort and/or symptoms associated with episodic heartburn, the immediate and sustained relief provided lasting longer in duration than when the human is orally treated with only the antacid and the immediate and sustained relief provided being faster than and lasting at least about as long in duration as when the human is orally treated with only the histamine $H_2$-receptor antagonist.

Claims 4-7 and 12 depend from claim 1 and refine it to claim certain types of $H_2$RA and antacid.

Two terms relevant to Perrigo's motion have already been construed: "orally

administering" means "providing for oral ingestion"; and "high potency antacid" means "an antacid having an acid-neutralizing capacity per recommended dose approximately equal to the circa-1992 formulations of, for example, Maalox Plus® or Mylanta-II®." Docket # 105 at 9, 19.

### B. The Accused Product

It is undisputed that Perrigo sells a generic version of Pepcid Complete, named Famotidine Complete, to retail stores and wholesalers, who in turn sell it to consumers. See Docket # 138 at ¶¶1-2. Famotidine Complete contains the same active ingredients in the same amount as Pepcid Complete; namely: (1) 10 mg famotidine, (2) 800 mg calcium carbonate, and (3) 165 mg magnesium hydroxide. Like Pepcid Complete, Famotidine Complete is also indicated to "[r]elieve[] heartburn due to acid indigestion and sour stomach." Docket # 139-11 at 29. The drug is administered orally. Id.

### C. Direct Infringement by the Accused Product

#### 1. Claim 1 - "Orally administering"

The crux of the parties' direct infringement dispute is straightforward: Perrigo seeks to limit the term "orally administering" to the actual act of delivering the drug into a patient's body, while Brigham contends that the act of selling the product with instructions to consumers is sufficient to satisfy the term. Specifically, Perrigo argues that in order to infringe claim 1, Brigham must show that Perrigo "(i) sees patients complaining of heartburn, (ii) diagnoses patients in need of treatment, or (iii) prescribes or administers its Store Brand product to patients." Docket # 122 at 12. Perrigo, however, has failed to identify any examples from the intrinsic record where "orally administering" is used to refer to activities such as seeing, diagnosing, or prescribing, all

of which Perrigo contends should be encompassed by the term. Further, Perrigo had ample opportunity to argue for this narrower definition of the disputed term at the claim construction phase of this case, but failed to do so. Rather, it argued only that this term required performance by an "end user." Docket # 85 at 17. I rejected such a construction because the phrase "orally administering to a human" "implies that an actor other than the end user performs some act that causes the human to ingest the medication." Docket # 105 at 9. Instead, I construed the term to simply mean "providing for oral ingestion." Id.

I will therefore consider the parties' summary judgment arguments as "part of the infringement analysis, not part of the claim construction." Thorner v. Sony Computer Entertainment Am., LLC, 669 F.3d 1362, 1369 (Fed. Cir. 2012). Here, Perrigo sells its generic product with instructions to wholesalers and retail stores, who in turn sell Perrigo's generic product directly to consumers. The question is whether, on these facts, a reasonable juror could conclude that Perrigo's sale of its generic product with instructions to consumers is an act of "providing for the oral ingestion" of the drug. See ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 520 (Fed. Cir. 2012) (concluding that, "[i]n the absence of [a narrower] construction," the infringement question should be resolved from the perspective of a "jury . . . free to rely on the plain and ordinary meaning of the term"). I conclude that it may. The operative act in the term's construction is "providing for." The plain meaning of "provide" means "[t]o furnish: supply; to make ready; to make available." Webster's II New Riverside University Dictionary 948 (1984). Applying the ordinary meaning of "providing for," a reasonable juror may find that by manufacturing and offering for sale its generic product, Perrigo

sufficiently meets the claim limitation of “orally administering.” Of course, a reasonable jury need not reach such a conclusion, but it is for the jury to decide whether to do so.

Perrigo’s reliance on Warner-Lambert Co. v. Apotex Corp. and related cases in support of its argument that “drug manufacturers are not direct infringers of method of treatment claims” is misplaced. Docket # 122 at 7. Here, the claim terms involve only a method of providing for certain relief; they do not include any limitations that require the alleged infringing actor to take additional steps. Cf. Warner-Lambert Co., 316 F.3d 1348, 1363 n.7 (Fed. Cir. 2003) (finding non-infringement where “the [pharmaceutical company] itself [does not] *treat* the disease” as required by the claim limitations); Eli Lilly and Co. v. Actavis Elizabeth LLC, No. 07-CV-3770-DMC, 2009 WL 1444606, at *4 (D.N.J. May 21, 2009) (finding that pharmaceutical company cannot directly infringe such method of treatment claims that involve a prescription drug because patent claims required drug to be physically administered by “the physician in charge of the case”); Acorda Therapeutics Inc. v. Apotex Inc., No. 07-CV-4937-GEB-MCA, 2011 WL 4074116, at *14 (D.N.J. Sept. 6, 2011) (no direct infringement challenge against pharmaceutical company where patent claims covered prescription drug that required act of giving drug with food to patient). Here, no such additional limitations exist. Thus, the reasoning in Warner-Lambert Co. is inapplicable.

**2. Claim 6 - “high potency antacid”**

Perrigo further contends that it does not infringe claim 6 of the ’137 patent, which narrows claim 1 to “the antacid being a high potency antacid.” ’137 patent at 7:54-56. Specifically, Perrigo contends that the patent claim is limited to “high potency . . . *liquid antacids*”. Docket # 142 at 4. I construed “high potency antacid” to mean “an antacid

having an acid-neutralizing capacity per recommended dose approximately equal to the circa-1992 formulations of, for example, Maalox Plus® or Mylanta-II®." Docket # 105 at 19. In construing this term, I expressly rejected Perrigo's proposed construction that imported a dosage amount limitation from the specification's description. Id. Additionally, the specification explains that the invention "contemplates . . . taking the antacid as a liquid dose and the histamine $H_2$-receptor antagonist as a solid dose *or vice versa*, or taking them both separately *as either solid or liquid doses*." '137 patent at 3:38-44 (emphasis added). Thus, claim 6 is not limited to a high potency liquid antacid. Viewing the facts in the light most favorable to Brigham, a reasonable juror could conclude that Perrigo's generic product contains a "high potency antacid."

**D. Indirect Infringement**

Perrigo also argues that Brigham cannot establish that it indirectly infringes the asserted claims of the '137 patent.

**1. Inducement Under 35 U.S.C. § 271(b)**

Induced infringement requires that (1) the accused inducer knew of the patent; (2) the accused inducer knowingly induced the infringing acts with a specific intent to encourage another's infringement of the patent; and (3) there is underlying direct infringement by a third party. See Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009); see also 35 U.S.C. § 271(b). In its summary judgment motion, Perrigo only appears to contest the second element. To meet the intent element, "the inducer must have an affirmative intent to cause direct infringement." DSU Med. Corp. v. JMS Co. LTD., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part). This means that "if an entity offers a product with the object of promoting its use to infringe,

as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties." Id. at 1305-06. The drug label for a generic drug may be evidence of induced infringement if the label "encourage[s], recommend[s], or promote[s] infringement." Takeda Pharm. USA, Inc. v. West-Ward Pharm. Corp., 785 F.3d 625, 631 (Fed. Cir. 2015).

Here, Brigham asserts that its Pepcid Complete product is covered by the '137 patent and it argues that Perrigo created a generic product of Pepcid Complete which contains the same label information as does Pepcid Complete. It follows that Perrigo's use of the same label as its branded product is evidence of an affirmative act to foster infringement by third parties. Perrigo denies that the '137 patent covers Brigham's Pepcid Complete. Because proof of the intent element rests on a disputed fact, whether the '137 patent covers Pepcid Complete, summary judgment of indirect infringement is precluded.

**2. Contributory Infringement Under 35 U.S.C. § 271(c)**

Section 271(c) of the Patent Act provides a claim for contributory infringement against anyone who "offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use[.]" 35 U.S.C. § 271(c). "To establish contributory infringement, the patent owner must show the following elements . . . : 1) that there is direct infringement, 2) that the accused infringer

had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010). The second prong requires that defendant "know 'that the combination for which his component was especially designed was both patented and infringing.'" Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 763-64 (2011) (citing Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488 (1964)).

Again, in its summary judgment motion, Perrigo appears to contest only the second and third elements, contending that Brigham cannot prove contributory infringement because Perrigo had no knowledge its product would infringe claim 1 of the '137 patent and that its product has substantial non-infringing uses. Similar to my conclusion above regarding induced infringement, whether Perrigo had knowledge that its product would infringe claim 1 of the '137 patent rests on the same disputed fact, whether the '137 patent covers Pepcid Complete.

Perrigo next argues that its generic product has substantial non-infringing uses because its label shows that 55% of patients do not obtain relief within 30 minutes of ingesting the drug, thus falling outside the scope of claim 1. Docket # 122 at 20. Perrigo's argument is flawed in several respects. First, its label does not expressly reflect that 55% of patients do not obtain relief within 30 minutes of ingesting the drug; rather its label shows that 45% of patients in clinical studies experienced adequate relief of heartburn episodes within 30 minutes of ingesting the drug. See Docket # 124-6 at 3. It is unclear that Perrigo can accurately draw an inverse conclusion based on the 45% figure that therefore 55% of the clinical study patients did not obtain such relief

within 30 minutes after ingesting the drug. Second, even if such a calculation is correctly inferred from this graph, it provides information from clinical studies without any explanation how that result translates to the experience of consumers. Cf. Acorda Therapeutics Inc., 2011 WL 4074116 at **14, 19 (finding substantial non-infringing use where 75% of the sales of the product were prescribed for non-infringing use). Finally, and most importantly, the information Perrigo relies on does not show that 55% of consumers use Perrigo's product in order to experience adequate relief after 30 minutes. See In re Bill of Lading Transmission and Processing System Patent Litigation, 681 F.3d 1323, 1338 (Fed. Cir. 2012) ("For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement."). Perrigo has not established that there are substantial non-infringing uses of its drug. Accordingly, Perrigo's motion for summary judgment of non-infringement is denied.[1]

## III. Conclusion

The defendant's motion for summary judgment of non-infringement (Docket # 121) is DENIED. In light of these rulings, I reserve ruling on plaintiff's motion to strike expert report of Gary Annunziata, D.O. (Docket # 126).

| | |
|---|---|
| November 10, 2016 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |

[1] Brigham asserts that the doctrine of equivalents is not implicated for purposes of addressing Perrigo's motion for summary judgment of non-infringement because Perrigo "concedes for purposes of this motion that their generic version, when used works as claimed in the '137 patent." See Docket # 137 at 22. As discussed above, Perrigo denies that the '137 patent covers Brigham's Pepcid Complete. In any event, beyond conclusory assertions that Perrigo's generic product will infringe under the doctrine of equivalents, Brigham has not presented any evidence, either through its expert or claim charts, to support such an argument. Accordingly, Brigham has waived a doctrine of equivalents argument at this stage of the case.